UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
VICENTE G. NOTENO GUANUNA,

Petitioner,

- against -

**MEMORANDUM & ORDER**
26-CV-5194 (PKC)

RAUL MALDONADO JR., *in his official capacity as Warden, Metropolitan Detention Center, Brooklyn, et al.*,

Respondents.
-----------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

On September 14, 2026, Petitioner Vicente G. Noteno Guanuna, filed a petition *pro se*, through his Next Friend, seeking a writ of habeas corpus and release from immigration detention on the grounds that his detention is unlawful. For the reasons explained below, the Petition is granted, and Petitioner must be released immediately.

**BACKGROUND**

Petitioner is a citizen of Ecuador who entered the United States without lawful admission in June 2024. (*See* Pet., Dkt. 1, ¶ 20.) However, while crossing the border into the United States, Petitioner was apprehended by immigration officers. (Resp'ts' Opp'n Pet. ("Opp'n Pet."), Dkt. 6, at 1.) After being arrested and placed in removal proceedings, Petitioner was released on his own recognizance. (*Id.*) That same day, Petitioner was issued a Notice to Appear ("NTA"), which stated that Petitioner was subject to removal from the United States pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1182(a)(6). (*Id.*) The NTA directed Petitioner to appear before an immigration judge at 26 Federal Plaza in New York, New York in the following year. (*Id.*)

In October 2024, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. (Pet., Dkt. 1, ¶ 21; Opp'n Pet., Dkt. 6, at 2; Dkt. 6-1 at ECF[1] 3.) On February 25, 2026, the Department of Homeland Security ("DHS") moved to pretermit that application. (Opp'n Pet., Dkt. 6, at 2.) In a March 22, 2026 order, an immigration judge granted DHS's motion and ordered that Petitioner be removed to Honduras. (*Id.*)

On April 20, 2026, Petitioner appealed the decision of the immigration judge to the Board of Immigration Appeals ("BIA") ("Petitioner's April 20 appeal"). (*See* Dkt. 6-1, at ECF 9.) The BIA rejected that appeal on April 27, 2026 because his Form EOIR-26A suggested that he had sufficient assets to pay the required appeal filing fees and thus he had "not established an inability to pay the required filing fee." (*Id.* (citing 8 C.F.R. § 1003.8(a)(3)) (April 27, 2026 BIA rejection of appeal).) The rejection indicated that he had "15 days from the date of th[e] notice to re-file the rejected document with the filing fee or new fee waiver request and any applicable filing deadline will be tolled during the 15-day cure period." (*Id.*) On May 11, 2026, Petitioner re-filed his appeal, which the BIA rejected on May 14, 2026 for the same issues with the fee waiver request form, as well as a lack of proof of service. (*See id.* at ECF 12 (May 14, 2026 BIA rejection of appeal).) On June 8, 2026, Petitioner again re-filed his appeal, which the BIA rejected on June 10, 2026 because it was "not accompanied by a properly completed Notice of Entry of Appearance (Form EOIR-27) or Notice of Entry of Limited Appearance for Document assistance (Form EOIR-60)," the "EOIR-60 [wa]s missing a signature and a statement," and for deficient proof of service. (*See id.* at ECF 16 (June 10, 2026 BIA rejection of appeal).)

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

On April 22, 2026, "based on the [i]mmigration [j]udge's March 22, 2026 Order," Immigration and Customs Enforcement ("ICE") issued a Form I-205 Warrant for Removal / Deportation (the "Form I-205 Warrant"). (Opp'n Pet., Dkt. 6, at 2.) "The warrant noted that Petitioner was subject to removal / deportation from the United States based on a final order by an immigration judge." (*Id.*) "The warrant [further] noted that Petitioner was subject to deportation pursuant to INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), noting inadmissibility of [noncitizens] present without admission or parole." (*Id.*)

On July 24, 2026, pursuant to the Form I-205 Warrant, ICE officers conducted a targeted enforcement action to locate and arrest Petitioner. (*Id.*) The ICE officers approached Petitioner's vehicle and after Petitioner confirmed his identity and that he was a citizen and national of Ecuador, ICE officers arrested Petitioner. (*Id.*) Petitioner was thereafter transported to 26 Federal Plaza, in New York, New York for processing. (*Id.*)

That same day, a friend of Petitioner's ("Petitioner's Next Friend") filed a petition for a writ of habeas corpus on his behalf in the Southern District of New York (the "SDNY Petition") based on their understanding that Petitioner was still detained in Manhattan at 26 Federal Plaza at the time of filing. *See* Pet., *Guanuna v. Mullin*, No. 26-CV-6352 (JGK) (S.D.N.Y. July 24, 2026), Dkt. 1. At some unspecified later time, Petitioner was transferred to the Metropolitan Detention Center Brooklyn ("MDC") where he is presently detained.

On September 14, 2026, while Petitioner was detained at MDC, Petitioner's Next Friend filed a petition for a writ of habeas corpus with this Court challenging the lawfulness of Petitioner's detention. (*See* Pet., Dkt. 1.) The same day, the Court issued a Show Cause Order directing Respondents to "show cause in writing why a writ of habeas corpus should not be issued and why Petitioner should not be immediately released." (O.S.C., Dkt. 4, at 1 (emphasis omitted).) On

September 17, 2026, Respondents filed their response arguing that (1) the Petition should be denied pursuant to the Abuse of Writ doctrine given that Petitioner's SDNY Petition remained pending (Resp'ts' Opp'n Pet. ("Opp'n Pet."), Dkt. 6, at 3–5), (2) the Court is jurisdictionally barred from considering the Petition by certain provisions of 8 U.S.C. § 1252 ("Section 1252"), (*id.* at 5–10), and (3) even if the Court could consider the Petition, Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6), (*id.* at 10–12).

On September 24, 2026, the Court ordered Respondents to address two issues: "(1) whether the abuse of the writ doctrine applies where the other petition has not been adjudicated and remains pending, and (2) whether the abuse of the writ doctrine applies if Petitioner voluntarily dismisses his other petition." (09/24/2026 Dkt. Order.) In response, Respondents acknowledged that the "majority position" is that the abuse of the writ doctrine typically applies when a writ application in one of the multiple jurisdictions where it is filed has been adjudicated on the merits. (Dkt. 8, at 1.) Respondents also agreed "to withdraw the abuse of the writ argument if Petitioner agree[d] to withdraw his [SDNY Petition]." (*Id.* at 2.) Given Petitioner's *pro se* status, the Court held a status conference on October 8, 2026 with Petitioner present to ensure he understood the state of his proceedings in both courts and what Respondents had offered with respect to the abuse of writ argument. (*See* 10/08/2026 Min. Entry.) At the conference, Petitioner indicated his intention to withdraw his SDNY Petition, and the Court directed Respondents' counsel to convey to the Southern District court, on Petitioner's behalf, this intent to withdraw the SDNY Petition. (*See id.*)

On October 8, 2026, the Court directed Respondents to file a letter addressing, *inter alia*, "why the existence of a pending BIA appeal as of April 22, 2026 does not mean that there was no final order of removal at the time the [Form] I-205 [Warrant] was issued such that the [Form] I-

205 [W]arrant was invalidly issued and could not have justified Petitioner's arrest." (10/08/2026 Dkt. Order.) Respondents filed their response on October 19, 2026. (*See* Resp'ts' Oct. 19, 2026 Ltr., Dkt. 13.)

## DISCUSSION

### I. Jurisdiction

Before turning to the merits of the Petition, the Court addresses Respondents' two independent arguments that the Court is jurisdictionally barred from adjudicating the claims in the Petition. First, Respondents argue that Sections 1252(a)(5) and 1252(b)(9) strip the jurisdiction of district courts to review orders of removal and thus bar the Court from considering the Petition. (*See* Opp'n Pet., Dkt. 6, at 5–8.) Second, Respondents argue that Section 1252(g) separately but similarly presents a jurisdictional restriction. (*See id.* at 9–10.) The Court is not persuaded by either argument.

#### A. Jurisdiction is Not Barred by 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)

Respondents incorrectly assert that Sections 1252(a)(5) and 1252(b)(9) bar the Court from exercising jurisdiction to consider Petitioner's claims that his detention is unlawful.

As relevant here, Section 1252(a)(5) states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5). Meanwhile, Section 1252(b)(9) states that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an [noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*Id.* § 1252(b)(9).

Decisions from the Supreme Court and the Second Circuit have further illuminated the scope of these provisions, and those decisions are binding on this Court. Particularly relevant here is the Second Circuit's recognition that

> longstanding principles of statutory interpretation requir[e] Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction. Repeatedly, including in the INA context, the Supreme Court has declared that [courts] should 'take account . . . of the presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement.'[2]

In *Jennings v. Rodriguez*, the Supreme Court declined to address the entire scope of Section 1252(b)(9), and instead held only that the statute did not apply and the district court had jurisdiction because the habeas petitioners

> [we]re not asking for review of an order of removal; they [we]re not challenging the decision to detain them in the first place or to seek removal; and they [we]re not even challenging any part of the process by which their removability w[ould] be determined. Under these circumstances, [Section] 1252(b)(9) d[id] not present a jurisdictional bar.

---

[2] *Öztürk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025) (first quoting *Kucana v. Holder*, 558 U.S. 233, 237 (2010); then citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483–84 (1991) ("We hold that given the absence of clear congressional language mandating preclusion of federal jurisdiction and the nature of respondents' requested relief, the [d]istrict [c]ourt had jurisdiction."); *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 671 (1986) ("[O]nly upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." (quotation marks omitted))).

583 U.S. 281, 294–95 (2018) (plurality opinion); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (approvingly quoting the same language from *Jennings*).

In *Öztürk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025), the Second Circuit rejected the Government's argument that "because [the habeas petitioner's] constitutional arguments under the First and Fifth Amendments relate[d] to her detention, and because detention itself is 'necessary for . . . removal proceedings,' [Section] 1252(b)(9) strips district courts of jurisdiction." *Id.* at 399 (citation omitted). The Second Circuit explained that Section 1252(b)(9) did not preclude jurisdiction because the "unlawful detention claims may be resolved without affecting pending removal proceedings." *Id.* "[E]ven if [the] claims have a relationship to 'pending removal proceedings,' [the] claims do not themselves challenge 'removal proceedings' and thus [Section] 1252(b)(9)'s 'channeling function has no role to play.'" *Id.* (quoting *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020)). The Second Circuit cited case law from other courts of appeals in recognizing that the phrase "removal proceedings" is to be construed narrowly as referring to the order of removal, and does not include claims of unlawful arrest and detention.[3] The *Öztürk* panel concluded that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking," *id.* at 400 (quoting *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)), and that jurisdiction exists where the petitioner "seeks release from detention," rather than review of the removal determination, *id.* The

[3] *See Öztürk*, 136 F.4th at 399–400 (citing *Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) ("A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings."); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process."); *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (holding that district court had jurisdiction where "habeas petitions challenged only the constitutionality of the [petitioners'] arrest and detention, not the underlying administrative order of removal")); *id.* at 400 n.8 (collecting additional cases).

Second Circuit further explored the scope of Section 1252(b)(9) in *Mahdawi v. Trump*, 183 F.4th 103 (2d Cir. 2026), and found that the claims at issue there were jurisdictionally barred because the petitioner's claim that his being targeted for removal offended his First Amendments right, "*unlike* a challenge to the length or conditions of confinement, 'raise[ed] legal questions challenging the government's very basis for trying to remove (and thus detain[ ]) him." *Id.* at 117 (emphasis added) (citation omitted).

Here, Petitioner's claims of unlawful detention fit squarely within the type of claims that are not jurisdictionally barred. Nowhere in the Petition does he suggest that he seeks to challenge the decision by Respondents to remove him. He is "not asking for review of an order of removal;" he is "not challenging the decision to detain [him] in the first place or to seek removal;" and he is "not even challenging any part of the process by which [his] removability w[ould] be determined." *See Jennings*, 583 U.S. at 294–95. Instead, as discussed below, the primary issue before the Court is whether Petitioner's arrest was lawful, which is entirely unrelated to removability. Many courts in this District have found that they have jurisdiction over claims where petitioners are challenging unlawful arrest and detention, rather than collaterally attacking an order of removal. *See, e.g.*, *Zhang v. Genalo*, 814 F. Supp. 3d 307, 320 (E.D.N.Y. 2025); *Flores v. Mullin*, No. 26-CV-1855 (GRB), 2026 WL 948298, at *2–3 (E.D.N.Y. Apr. 8, 2026); *D.J.R.R. v. Genalo*, No. 26-CV-3124 (AMD), 2026 WL 1746716, at *2–3 (E.D.N.Y. June 17, 2026); *Diallo v. Lyons*, No. 26-CV-3364 (NRM), 2026 WL 1791494, at *4–5 (E.D.N.Y. June 22, 2026). Each found that district courts have jurisdiction to consider claims of unlawful arrest and detention arising out of statutory and/or constitutional violations, notwithstanding the limitations imposed by Sections 1252(a)(5) and 1252(b)(9) on district courts' jurisdiction to consider claims directly or indirectly challenging

orders of removal. This Court similarly finds that Respondents' reading of Sections 1252(a)(5) and 1252(b)(9) sweeps too broadly.

**B. Jurisdiction is Not Barred by 8 U.S.C. § 1252(g)**

For similar reasons, Respondents' argument that Section 1252(g) deprives the Court of jurisdiction fails. Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizens] under this chapter.

8 U.S.C. § 1252(g).

The Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), clarified that Section 1252(g) does not "cover[] the universe of deportation claims," but rather "is much narrower. The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482. In *Öztürk*, the Second Circuit further explained that a challenge to unlawful detention does not fall within any of these "three discrete exercises of prosecutorial discretion that are shielded by [Section] 1252(g)." 136 F.4th at 397–98.

Here, Petitioner is challenging his unlawful arrest and detention, and does not challenge the decision to "commence proceedings," "adjudicate" his case, or "execute" his removal order. *See* 8 U.S.C. § 1252(g). At most, Petitioner's arrest and detention might be viewed as coming within the Attorney General's authority to "execute" Petitioner's removal order. However, Respondents cite no authority, and the Court is aware of none, supporting this interpretation, which is, in any event, unpersuasive. Rather, the Court interprets the "execution" of a removal order to

be limited to the actual, physical removal of an immigrant from the United States and entirely separate from the arrest and/or detention of the noncitizen for that purpose. Indeed, Respondents do not make this argument and instead cite cases, such as *Lin v. Borgen*, No. 25-CV-5618 (MMG), 2025 WL 2158874 (S.D.N.Y. July 30, 2025) and *Troy as Next Friend Zhang v. Barr*, 822 Fed. App'x. 38 (2d Cir. 2020), (*see* Opp'n Pet., Dkt. 6, at 9–10), that involved claims seeking *stays of removal*, not challenges to the lawfulness of arrests and detention. The Court therefore finds that Section 1252(g) is inapplicable to the habeas claim made here.

In sum, no provision of Section 1252 bars the Court from considering Petitioner's claim.

## II. Petitioner's Arrest was Unlawful

ICE agents arrested Petitioner pursuant to the Form I-205 Warrant. However, this Form I-205 Warrant was invalid and could not justify Petitioner's arrest and subsequent detention.

"Form I-205 warrants are used to detain those already subject to a final order of removal." *Ger V. v. Mullin*, No. 26-CV-2543 (KMM) (DTS), 2026 WL 1847044, at *2 (D. Minn. June 26, 2026) (citing 8 C.F.R. §§ 241.2, 241.3(a)); *see also* 8 C.F.R. § 241.2(a)(1) ("A Form I-205, Warrant of Removal, *based on the final administrative removal order* in the [noncitizen's] case will be issued by any of the following immigration officials: [list of types of immigration officers]" (emphasis added)). Meanwhile, "an order of removal is 'final' upon the earlier of the BIA's affirmance of the immigration judge's order of removal or the expiration of the time to appeal the immigration judge's order of removal to the BIA." *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (citing 8 U.S.C. § 1101(a)(47)(B)(i), (ii)). Conversely, an "order of the immigration judge, then, is not final when a timely appeal is taken to the [BIA]." *Guo v. U.S. Dep't of Just.*, 422 F.3d 61, 63 (2d Cir. 2005) (citation omitted); *see also Torres-Casas v. Blanche*, 182 F.4th 1121, 1126 (9th Cir. 2026) ("By regulation, during the pendency of an appeal to the BIA, the [immigration judge's] decision is automatically stayed." (citing 8 C.F.R. § 1003.6(a))).

Here, the Form I-205 Warrant purports to rest on a final order of removal of an immigration judge, (*see* Dkt. 6-1, at ECF 19 (Form I-205 Warrant stating Petitioner "is subject to removal/deportation from the United States, based upon a final order by: . . . an immigration judge in exclusion, deportation, or removal proceedings")), but it is dated April 22, 2026, that is, *while Petitioner's April 20 appeal of the immigration judge's decision was still pending before the BIA*, (*see* Dkt. 6-1, at ECF 9 (BIA decision referencing the appeal having been filed on April 20, 2026 and denying the appeal on April 27, 2026 with leave to refile)). Thus, pursuant to the federal government's own regulations and the case law, at the time the Form I-205 Warrant was issued, there was *no* final order of removal to serve as the predicate for the Form I-205 Warrant issued for Petitioner's arrest and detention. *See Chupina*, 570 F.3d at 103 ("[A]n order of removal is 'final' upon the earlier of the BIA's affirmance of the immigration judge's order of removal or the expiration of the time to appeal the immigration judge's order of removal to the BIA." (citing 8 U.S.C. § 1101(a)(47)(B)(i), (ii))); *Torres-Casas*, 182 F.4th at 1126 ("By regulation, during the pendency of an appeal to the BIA, the [immigration judge's] decision is automatically stayed." (citing 8 C.F.R. § 1003.6(a))).

Respondents contend that there was no pending appeal to the BIA as of April 22, 2026 because Petitioner only *attempted* unsuccessfully to file an appeal, as evidenced by its rejection by the BIA seven days later. (*See* Resp'ts' Oct. 19, 2026 Ltr., Dkt. 13, at 1.) In support of this argument, Respondents look to 8 CFR § 1241.1(c) which states that "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: . . . Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time." 8 CFR § 1241.1(c). Respondents then point to the regulatory definition of "filing" as:

> the actual receipt of a document by the appropriate immigration court or the Board of Immigration Appeals. An electronic filing that is accepted by the Board or an immigration court will be deemed filed on the date it was submitted. A paper filing that is accepted by the Board or an immigration court will be deemed filed on the date it was received by the Board or the immigration court. A filing that is rejected by the Board or the immigration court as an improper filing will not be deemed filed on the date it was submitted or received.

8 C.F.R. § 1001.1(dd). Here, the BIA rejected Petitioner's April 20 appeal because it found that Petitioner's Form EOIR-26A suggested that he had sufficient assets to pay the required appeal filing fees and thus he had "not established an inability to pay the required filing fee." (Dkt. 6-1, at ECF 9 (citing 8 C.F.R. § 1003.8(a)(3)).) Respondents thus conclude that Petitioner's appeal was an "improper filing" that did not qualify as an appeal and was not to be deemed filed on the date it was submitted to, or received by, the BIA. (*See* Resp'ts' Oct. 19, 2026 Ltr., Dkt. 13, at 2.)

However, Respondents' argument only goes so far. While it might be true that Petitioner's April 20 attempted appeal qualifies as an "improper filing," that does not mean that the appeal period had expired. As Respondents note, an immigration judge's order of removal becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time." 8 CFR § 1241.1(c). In this case that would have been April 21, 2026—30 days after the immigration judge's March 22, 2026 decision. *See* 8 C.F.R. § 1003.38 ("[T]he Notice of Appeal from a Decision of an Immigration Judge (Form EOIR-26) shall be filed directly with the [BIA] within 30 calendar days of the Immigration Judge's decision."). However, that April 21, 2026 deadline does not account for the tolling of the deadline prescribed by regulation as a result of Petitioner's attempted appeal. When a "fee waiver request does not establish the inability to pay the required fee," as was the case for Petitioner, "the appeal or motion will not be deemed properly filed, provided the [BIA] grants 15 days to re-file the rejected document with the filing fee or new fee waiver request and *tolls any applicable filing deadline during the 15-day cure*

*period*." 8 C.F.R. § 1003.8(a)(3) (emphasis added). Indeed, the BIA's notice of rejection of Petitioner's appeal specifically notes that Petitioner had "15 days from the date of th[e] notice to re-file the rejected document with the filing fee or new fee waiver request and *any applicable filing deadline will be tolled during the 15-day cure period*." (Dkt. 6-1, at ECF 9 (emphasis added) (April 27, 2026 BIA rejection of appeal).) The Court's research suggests only two other courts have considered this issue and both have similarly recognized the tolling effect of 8 C.F.R. § 1003.8(a)(3). *See Jose G.M.L. v. Warden of the Golden State Annex Det. Facility*, No. 1:26-CV-00047 (TLN) (EFB), 2026 WL 1983412, at *1 n.2 (E.D. Cal. July 9, 2026) (noting that "[a]n order of removal is not final or executable during the appeal period," and citing 8 C.F.R. § 1003.8(a)(3) in finding that petitioner's "appeal period ha[d] been tolled by the [BIA]," so respondents could not "lawfully execute [p]etitioner's order of removal"); *Alcazar v. Warden of the Cal. City Det. Facility*, No. 1:26-CV-00876 (JLT) (EPG), 2026 WL 3120953 (E.D. Cal. Oct. 16, 2026) (report and recommendation pending before district court; concluding based on the same reasoning that the removal period had not commenced). Accordingly, Petitioner's time allotted for appeal had not yet expired as of April 22, 2026 and the immigration judge's order of removal was not final at the time Respondents purported to issue the Form I-205 Warrant that day.

By arresting Petitioner without a valid warrant, Respondents violated Petitioner's due process rights. *See Cartagena Jaco v. Blanche*, No. 26-CV-4798 (JPO), 2026 WL 1786007, at *4 (S.D.N.Y. June 22, 2026) (finding petitioner's due process rights were violated where respondents had "not shown that the [I-205] warrant rested on a valid legal and procedural foundation, and the warrant itself [could not] serve as evidence of a lawful arrest and detention"); *De La Rosa Izaguirre v. Blanche*, No. 26-CV-2911 (PKC), 2026 WL 2023200, at *12 (E.D.N.Y. July 13, 2026) (similar);

*Martin v. Joyce*, No. 26-CV-4699 (AT), 2026 WL 2199777, at *4 (S.D.N.Y. July 30, 2026) (similar).

## III. Petitioner is Entitled to Release

"Upon finding a constitutional violation, a district court 'may' grant a writ of habeas corpus and 'dispose of the matter as law and justice so require.'" *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319 (E.D.N.Y. 2025) (quoting 28 U.S.C. §§ 2241(a), 2243), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."). "When continued detention violates a petitioner's substantive due process right to be free from civil detention, '[o]nly immediate release [can] abate the constitutional harm.'" *Jiang v. Genalo*, No. 26-CV-2402 (AMD), 2026 WL 1413915, at *6 (E.D.N.Y. May 20, 2026) (quoting *Patin v. Trump*, No. 26-CV-0071 (GWC), 2026 WL 783664, at *5 (D. Vt. Mar. 17, 2026)). The Court therefore determines that immediate release is the only appropriate relief.

Respondents are directed to seek leave from this Court should they seek to re-detain Petitioner. Upon a motion demonstrating that Respondents have complied with all relevant and necessary requirements to justify detention, the Court will review the evidence of satisfactory compliance and, if necessary, hold a hearing to confirm compliance. *See De La Rosa Izaguirre*, 2026 WL 2023200, at *14 (ordering the same).

## CONCLUSION

For the foregoing reasons, Vicente G. Noteno Guanuna's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Pet., Dkt. 1), is GRANTED.

Respondents are hereby ORDERED to release Vicente G. Noteno Guanuna immediately, and no later than October 22, 2026, at 12:00 p.m. ET. Respondents shall release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket by 5:00 p.m. ET on October 22, 2026.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies lawful detention. The Court retains jurisdiction to review any subsequent arrest or detention of Petitioner by Respondents to ensure compliance with this Memorandum & Order.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action. *See* 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Memorandum & Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 21, 2026
Brooklyn, New York